UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-cv-22913

PIA STATAM,

      Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.,

      Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, PIA STATAM ("STATAM"), sues Defendant, ROYAL CARIBBEAN CRUISES, LTD., ("ROYAL"), and alleges:

1.    STATAM is a citizen of the state of Nevada and is entitled to a jury trial.

2.    Defendant, ROYAL is a citizen of the state of Florida and the nation of Liberia.

3.    The excursion operator, upon information and belief, is a foreign entity based in Jamaica (hereinafter referred to as the "Excursion Operator").

4.    The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332. In the alternative, if diversity jurisdiction does not apply, then this matter falls under the admiralty and maritime jurisdiction of this Court.

5.    ROYAL, at all times material hereto, personally or through an agent:

    a.    Operated, conducted, engaged in or carried on a business venture in this state and/or

county or had an office or agency in this state and/or county;

b.   Was engaged in substantial activity within this state;

c.   Operated vessels in the waters of this state;

d.   Committed one or more of the acts stated in Florida Statutes §§ 48.081, 48.181 and/or 48.193;

e.   The acts of ROYAL set out in this Complaint occurred in whole or in part in this county and/or state.

f.   ROYAL was engaged in the business of providing to the public and to STATAM in particular, for compensation, vacation cruises aboard their vessel(s), excursions, and/or premises.

6.   Upon information and belief, at all times material hereto, the Excursion Operator entered into a contract with ROYAL concerning the subject excursion, which (a) contains a choice-of-law clause designating Florida law as the governing law; (b) contains a provision whereby the Excursion Operator agree to submit to the exclusive jurisdiction of the courts of Florida; (c) involves consideration of not less than $250,000 or relate to an obligation arising out of a transaction involving in the aggregate not less than $250,000; (d) does not violate the U.S. Constitution; and (e) has at least one party of the contract that is a resident of Florida or incorporated under the laws of Florida. Therefore, the contract between ROYAL and the Excursion Operator meets all requirements to satisfy a finding of specific jurisdiction under Florida Statute § 48.193(1)(a)(9).

7.   At all times material hereto, the Excursion Operator are also subject to jurisdiction

pursuant to Federal Rule of Civil Procedure 4(k)(2) because (a) the instant maritime tort claims arise under federal law; (b) the Excursion Operator are not subject to jurisdiction in any state's courts of general jurisdiction; and (c) exercising jurisdiction over the Excursion Operator is consistent with the United States Constitution and laws based on the Excursion Operator's minimum contacts with the United States as a whole such that the maintenance of this lawsuit does not offend traditional notions of fair play and substantial justice. These minimum contacts, include, but are not limited to, the Excursion Operator's location and operation in the United States, as well as marketing, promoting, and selling tickets for its excursions in the United States directly and/or through cruise lines as their agents located all over the United States.

8.   ROYAL is subject to the jurisdiction of the courts of this state.

9.   The causes of action asserted in this Complaint arises under the General Maritime Law of the United States.

10.   STATAM has satisfied all conditions precedent to the bringing of this action.

## FACTS COMMON TO ALL COUNTS

11.   At all times material hereto, ROYAL owned, operated, managed, maintained and/or controlled the vessel, the *Symphony of the Seas*.

12.   At all times material hereto, ROYAL managed and/or controlled the location of STATAM's incident.

13.   At all times material hereto, ROYAL owned, operated, managed, maintained and/or controlled the subject excursion.

14.   At all times material hereto, the subject excursion was operated by employees and/or

agents of ROYAL, including, but not limited to, the Excursion Operator.

15.    At all times material hereto, the relevant personnel and entities at the excursion location were crewmembers, employees, agents and/or borrowed servants of ROYAL, including, but not limited to, the Excursion Operator.

16.    On or about May 1, 2024, STATAM was on a cruise on the *Symphony of the Seas*, which had been in navigable waters.

**Statements Concerning
Shore Excursions Generally and the Subject Excursion Specifically**

17.    On January 29, 2024, STATAM booked and purchased an excursion entitled "Green Grotto Caves and Dunn's River Falls" (hereinafter "subject excursion") through ROYAL's website, and paid ROYAL for this excursion, and purchased the excursion because it was a ROYAL excursion purchased from ROYAL's website.

18.    ROYAL's website and promotional materials contained information and descriptions of shore excursions, including the "Green Grotto Caves and Dunn's River Falls" that STATAM booked and purchased through ROYAL.

19.    The website and promotional materials provided by ROYAL stated that the excursions were operated and/or overseen by ROYAL, its agent(s), and/or they were safe. Specifically, the representations included:

  a.  ROYAL worked with reputable, local tour operators to offer a wide variety of excursions.

  b.  ROYAL advertised the subject excursion as "strenuous" level excursion, when it

**ARONFELD TRIAL LAWYERS**
**Aronfeld.com**
**Page 4 of 33**

really was not just a strenuous level excursion, it was extremely dangerous.

c.  ROYAL offered convenience, flexibility, and peace of mind.

d.  There were no hidden costs for transfers or entrance fees.

e.  Dedicated pre-cruise and onboard specialists were available to assist.

f.  Prospective customers could leverage the knowledge and experience of onboard consultants during the cruise.

g.   Customers would have peace of mind knowing their tours were run by insured operators.

h.  Flexibility to modify or cancel excursions without penalty up to 48 hours prior to arrival into port.

20.    STATAM relied on these representations in choosing to purchase the "Green Grotto Caves and Dunn's River Falls" through ROYAL.

21.    After booking the subject cruise, ROYAL sent STATAM promotional material, which provided information and descriptions of shore excursions, including the subject excursion.

22.    At all times material hereto, the subject excursion was offered, marketed, sponsored, recommended, sold, arranged, owned, operated and/or managed by ROYAL, and STATAM believed that the subject excursion was operated by agents of ROYAL.

23.    At all times material hereto, STATAM reviewed ROYAL's information and/or material concerning the subject excursion and relied upon ROYAL's representations exclusively and to STATAM's detriment in deciding to purchase the subject excursion from ROYAL and to

participate in same during STATAM's cruise aboard the *Symphony of the Seas*.

### Subject Incident

24.     On or about May 1, 2024, as part of STATAM's cruise, STATAM participated in the subject excursion in Falmouth, Jamaica.

25.     This excursion was marketed by ROYAL's website as a "strenuous" activity level excursion, when it should have been marketed as an "Extreme," "Dangerous", or a similar level excursion.[1]



---

[1] https://www.royalcaribbean.com/shore-excursions/fmt/falmouth-jamaica/green-grotto-caves-dunns-river-falls/fy0y



26.     The excursion was booked by STATAM. There was no sufficient mention in the advertisement or the booking confirmation for the excursion from ROYAL that the excursion was being operated by independent contractors for whom ROYAL believed it was not responsible. Instead, ROYAL created the appearance that it was providing the excursion either directly or through agents of ROYAL. STATAM placed trust in ROYAL, not some unknown entity she had never heard of before. Furthermore, ROYAL received part of the fee that STATAM paid for the excursion.

27.     On January 29, 2024, STATAM set off for a ROYAL Cruise vacation aboard the *Symphony of the Seas*. On May 1, 2024, STATAM took the subject excursion, which she booked through ROYAL. STATAM booked the excursion on January 29, 2024.

28.     STATAM was transported to the ship sponsored "Green Grotto Caves and Dunn's River Falls" in Falmouth, Jamaica.

29.     After receiving brief instructions, the excursion staff directed STATAM and her group to climb some rocks.

30.     The excursion staff told her group to hold onto one another for safety.

31.     However, some people started to lose their grip due to the slippery rocks.

32.     As STATAM attempted to climb up the rocks, her feet slipped on the rocks she was standing on.

33.     As a result, she fell flat on her face, causing her to suffer severe injuries.

34.     Two photographs of the injuries to STATAM's teeth are attached below, as well as three photographs of her prior to her incident.









**ARONFELD TRIAL LAWYERS**
**Aronfeld.com**
**Page 10 of 33**

35.     Among other things, ROYAL failed to adequately and prominently warn of the slippery rocks and that tour guides would dangerously rush the passengers due to the high volume of passengers on the excursion, and failed to warn that there were insufficient handrails or other means to adequately grip while climbing the rocks to ensure the safety of those climbing them. The lack of proper safety measures, combined with the wet surface, resulted in STATAM slipping and falling, causing her to sustain serious injuries.

36.     Among other things, ROYAL also failed to provide sufficient warnings of the lack of supervision and safety measures provided by the Excursion Operator, which left STATAM vulnerable, resulting in her losing her footing, slipping on the slippery rocks, and ultimately falling, which caused her to suffer serious injuries.

37.     At all times material hereto, ROYAL was or should have been on notice that the "Green Grotto Caves and Dunn's River Falls" excursion was dangerous and/or risk-creating. This was known to it, and/or should have been known to it, because ROYAL's own website stated that "The water-covered rocks in the falls are slippery and extreme caution must be used at all times; you are supporting others while making the climb. **There is a high risk of slips and falls**."[2] (emphasis added). However, STATAM did not see this warning because she did not book the excursion, her daughter did. Moreover, this warning was not prominently displayed at the top of the web page, nor was any part of it bolded, underlined, or otherwise emphasized to draw STATAM's attention to it. Moreover, the warning did not mention that there would not be anywhere adequate for STATAM to grip or hold on to while climbing the rocks. Had STATAM

---

[2] https://www.royalcaribbean.com/shore-excursions/fmt/falmouth-jamaica/green-grotto-caves-dunns-river-falls/fy0y

seen a complete and adequate warning, she would not have gone on the subject excursion.

group.

- The water-covered rocks in the falls are slippery and extreme caution must be used at all times; you are supporting others while making the climb. There is a high risk of slips and falls.

     38.    Furthermore, the excursion staff were inattentive and lacked proper preparedness for addressing potential hazards in the area. Additionally, previous passengers may have complained and/or commented about the safety conditions of the excursion, including the slippery rocks, directly to ROYAL through its website and/or through complaints, comments, and/or other reviews from other sources. For example, ROYAL should have known of the danger of the subject excursion due to reviews on popular travel sites such as TripAdvisor.com, which had reviews such as the following:[3]

---

[3] https://www.tripadvisor.com/AttractionProductReview-g612473-d17526003-Dunns_River_Falls_and_Green_Grotto_Caves-Falmouth_Trelawny_Parish_Jamaica.html

https://www.tripadvisor.com/Attraction_Review-g147317-d1005983-Reviews-Green_Grotto_Caves-Runaway_Bay_Saint_Ann_Parish_Jamaica.html









39.    ROYAL was made aware through other complaints, comments, and/or reviews about the dangers of the subject excursion and/or similar excursions, as well as ROYAL's failure to take adequate responsibility for injuries, problems, and/or other negative experiences related to its excursions. This includes, but is not limited to, the fact that the subject excursion was more dangerous than passengers were led to believe by ROYAL, the specific dangers posed by the excursion, and ROYAL's failure to make amends and/or fully compensate individuals harmed by the risks associated with its excursions.

40.    ROYAL knew or should have known of these dangers and/or issues as complaints, comments, and/or other reviews were either posted on its website, which it either reviewed or

should have reviewed prior to STATAM's incident, and/or other sources it either reviewed or should have reviewed prior to STATAM's incident.

41.    In addition, before STATAM's incident, ROYAL was or should have been on notice that the subject excursion was dangerous and/or risk creating due to other cruise ship passengers being injured on similar excursions. ROYAL's policies and procedures in regard to its excursion operators require that these operators disclose all prior incidents to ROYAL. For example, previous cruise ship passengers suffered prior incidents in the following cases at the subject excursion site involving similar dangers: *Corby v. Kloster Cruise Ltd.*, No. C-89-4548 MHP (ARB), 1990 WL 488464, at *1 (N.D. Cal. Oct. 5, 1990) ("Christine Corby was a passenger on a cruise ship owned and operated by Kloster Cruise Limited ("Kloster"). On December 27, 1988, while the ship was in port in Jamaica, Ms. Corby participated in an onshore excursion tour of **Dunn's River Falls. While climbing the waterfalls with the tour group and guide, Ms. Corby slipped on a rock and fell, sustaining bodily injuries**.") (emphasis added); *see also Flaherty v. Royal Caribbean Cruises*, Ltd., No. 15-22295-CIV, 2017 WL 487063, at *1 (S.D. Fla. Feb. 3, 2017) ("One of the scheduled stops was in Jamaica, and in preparation for visiting this port-of-call Plaintiff booked a shore excursion to Dunn's River Falls. (Id. at ¶ 88.) On July 8, 2014, while participating in the excursion to Dunn's River Falls, Plaintiff slipped and fell, breaking his leg and suffering other injuries. . . . Plaintiff alleges that he was instructed by the tour guides at Dunn's River Falls to hold hands with the other hikers and that he fell because the girl whose hand he was holding slipped.").

### FACTS CONCERNING THE RELATIONSHIP/ARRANGEMENT BETWEEN ROYAL AND THE EXCURSION OPERATOR

42.    At all times material hereto, the Excursion Operator were the agents and/or apparent

agents of ROYAL by virtue of the following, such that ROYAL is estopped from denying that the Excursion Operator were the agents and/or apparent agents of ROYAL:

a.  ROYAL made all arrangements for the subject excursion without sufficiently disclosing to STATAM that the subject excursion was being run by another entity and/or entities that it did not believe were its agents; and/or

b.  ROYAL marketed the subject excursion using its company logo on its website and/or in its brochures and/or on its ship without sufficiently disclosing to STATAM that the subject excursion was being run by another entity and/or entities that it did not believe were its agents; and/or

c.  ROYAL maintained an excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the subject excursion without sufficiently disclosing to STATAM that the subject excursion was being run by another entity and/or entities that it did not believe were its agents; and/or

d.  ROYAL recommended that its passengers not engage in excursions, tours and/or activities that are not sold through ROYAL; and/or

e.  Until the point that STATAM actually participated in the subject excursion, STATAM's exclusive contacts concerning the subject excursion was with ROYAL; and/or

f.  The fee for the subject excursion was charged to STATAM, and collected from STATAM, exclusively by ROYAL; and/or

g.  STATAM received the receipt for the purchase of the subject excursion exclusively

from ROYAL.

43.     At all times material hereto, STATAM relied on the above, to STATAM's detriment, so as to believe that the Excursion Operator were the employee(s) and/or agent(s) of ROYAL, in choosing the subject excursion. At no time did ROYAL sufficiently represent to STATAM in particular, or the ship's passengers in general, in a meaningful way that the Excursion Operator were not agent(s) and/or employee(s) of ROYAL.

44.     At all times material hereto, ROYAL was the owner or co-owner of the subject excursion. At all times material hereto, ROYAL was responsible for, and liable for, the actions of the Excursion Operator with respect to the subject excursion.

45.     In the alternative, at all times material hereto, a partnership and/or joint venture existed between the Excursion Operator by virtue of the following, whereby ROYAL and the Excursion Operator are jointly and severally responsible for the negligence of each other as partners of the partnership and/or joint venture:

   a.   ROYAL and the Excursion Operator entered into an agreement whereby: ROYAL made all arrangements for STATAM, on behalf of the partnership with the Excursion Operator, for the subject excursion being run by the Excursion Operator; and/or

   b.   ROYAL marketed on ROYAL's website and/or in its brochures and/or on its ship, on behalf of the partnership with the Excursion Operator, the subject excursion being run by the Excursion Operator; and/or

   c.   ROYAL maintained an excursion desk on its ship where it offered, sold, provided information to, and answered questions of passengers, on behalf of the partnership

with the Excursion Operator, about the subject excursion being run by the Excursion
Operator; and/or

d. The Excursion Operator provided the equipment to be used in the subject excursion;
and/or

e. ROYAL determined the amount of money charged for the subject excursion being
run by the Excursion Operator; and/or

f. ROYAL collected the amount of money charged for the subject excursion being run
by the Excursion Operator; and/or

g. ROYAL shared profits with the Excursion Operator for the subject excursion by
retaining a portion of the ticket sales for the subject excursion after the tickets were
sold, and paying the Excursion Operator the remaining portion of the ticket sales for
the subject excursion; and/or

h. ROYAL shared losses with the Excursion Operator for the subject excursion,
including, for instance, when ROYAL issued a refund to passengers for the Excursion
Operator's excursion(s), including, but not limited to, the subject excursion.

i. ROYAL required the Excursion Operator to purchase an insurance policy for its
benefit and to include ROYAL as a named insured.

46. At all times material hereto, ROYAL was a partner in the subject excursion.

47. At all times material hereto, ROYAL operated and/or supervised the subject
excursion.

48.     At all times material hereto, the Excursion Operator owned and operated the subject excursion. The Excursion Operator were involved in providing the subject excursion to STATAM. At all times material hereto, the Excursion Operator were the agent(s), apparent agent(s), joint venturer(s), servant(s), and/or employee(s) of ROYAL and at all times acted within the course and scope of their agency, apparent agency, joint venture, service and/or employment.

**FACTS CONCERNING THE NEGLIGENCE OF THE EXCURSION OPERATOR**

49.     At all times material hereto, it was a duty of the Excursion Operator to provide STATAM with reasonable care under the circumstances.

50.     On or about May 1, 2024, the Excursion Operator and/or their agents, employees, and/or crewmembers contributed to the dangerous and/or risk-creating conditions of the slippery rocks and breached their duty to provide STATAM with reasonable care under the circumstances through the following acts and/or omissions, including but not limited to:

    a.   The lack of proper handrails or other adequate means to grip along the slippery rocks;

    b.   The failure to adequately and prominently warn passengers (including STATAM) of the slippery rocks;

    c.   The failure to place adequate warning signs regarding the slippery surface or provide alternate safer routes;

    d.   Failing to remedy, as well as failing to warn of, the dangers discussed in paragraphs 24-41 (in the "subject incident" section) of STATAM's complaint; and/or

    e.    Failure to adequately ensure that the subject excursion area was reasonably safe for passengers, particularly with respect to wet and slippery surfaces and the lack of

sufficient handrails or other adequate means to grip; and/or

f.  Failure to sufficiently remedy the dangers of the subject excursion, including, but not limited to, the poor condition of the slippery rocks and their surroundings used for the subject excursion; and/or

g.  Failure to provide clear and adequate warnings or signage to alert participants (including STATAM) of the slippery rocks and the absence of necessary safety precautions; and/or

h.  Failure to adequately monitor, supervise, and/or inspect the subject excursion to ensure that it employed reasonably safe conditions for passengers, including but not limited to maintaining a safe environment; and/or

i.  Failure to adequately warn passengers (including STATAM) of the dangers involved with the slippery rocks used for the subject excursion; and/or

j.   Failure to adequately warn passengers (including STATAM) of the prior complaints regarding the dangers of the subject excursion; and/or

k.  Failure to adequately warn passengers (including STATAM) of the dangers of participating in the subject excursion; and/or

l.  Failure to adequately monitor, supervise and/or inspect the subject excursion to ensure that they employed reasonably safe means for passengers to participate in the subject excursion; and/or

m. Failure to ensure that properly trained and supervised persons operated the subject excursion; and/or

n.   Failure to adequately supervise the operation of the excursion and ensure that safety protocols were followed, particularly concerning hazardous conditions such as the slippery rocks; and/or

o.   Having a shore excursion that was not competently operated, as demonstrated by the aforementioned issues, as well as comments, complaints, and/or other reviews.

51.   All or some of the above acts and/or omissions by the Excursion Operator, their agents, employees, and/or crewmembers directly caused and/or contributed to STATAM being severely injured. The above acts and/or omissions resulted in the slippery rocks being unreasonably unsafe without adequate warning when STATAM encountered them, which in turn was a cause of STATAM's incident. Consequently, these acts and/or omissions resulted in STATAM's injuries, pain, suffering, and other damages.

52.   At all times material hereto, the Excursion Operator knew of the foregoing conditions causing STATAM's incident and did not correct them, or the conditions existed for a sufficient length of time so that the Excursion Operator, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them. Insofar as it relates to conditions that the Excursion Operator did not create, the Excursion Operator's knowledge was or should have been acquired through prior incident(s), through its maintenance and/or inspections of the subject excursion (including, but not limited to, inspections that revealed the dangers and/or which would have revealed the dangers had the inspections adequately taken place instead of either failing to occur and/or inadequately occurring), and/or through its training and/or supervision of its agents, employees and/or crewmembers, which either revealed or should have revealed their

incompetence.

53.   As a direct and proximate result of the negligence of the Excursion Operator, STATAM was injured about STATAM's body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, traumatic stress and other mental and/or nervous issues, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of STATAM's injuries, and suffered physical handicap. The injuries are permanent or continuing in nature and STATAM will suffer the losses and impairments in the future. In addition, STATAM lost the benefit of STATAM's vacation, cruise, and transportation costs.

### COUNT I – NEGLIGENT RETENTION AGAINST ROYAL

STATAM re-alleges, adopts, and incorporates by reference the allegations in paragraphs 1-16, 24-41, and 49-53, as though alleged originally herein.

54.   At all times material hereto, it was the duty of ROYAL to provide STATAM with reasonable care under the circumstances.

55.   At all times material hereto, ROYAL had a duty not to retain incompetent and/or unfit excursion operators.

56.   At all times material hereto, as part of its duty not to retain incompetent and/or unfit excursion operators excursion operators, it was incumbent on ROYAL to diligently inquire into the Excursion Operator's competency and fitness.

57.   On or about May 1, 2024, ROYAL and/or its agents, servants, joint venturers and/or employees breached its duty to provide STATAM with reasonable care under the circumstances

by retaining the Excursion Operator, who ROYAL knew or should have known was incompetent and/or unfit based on the failures discussed in the paragraph immediately below:

58.    At all times material hereto, ROYAL knew or should have known of the foregoing conditions causing the Excursion Operator's incompetence and/or unfitness, or the conditions existed for a sufficient length of time so that ROYAL, in the exercise of reasonable care under the circumstances, should have learned of them. This knowledge was or should have been acquired through:

    a.  Prior incidents in which persons were injured on the subject excursion under circumstances substantially similar to those STATAM encountered; and/or

    b.  ROYAL's initial approval process of the Excursion Operator and/or the excursion, including, but not limited to, having ROYAL's representative(s) take the excursion, which should have identified the unsafe conditions of the slippery rocks; and/or

    c.  ROYAL's yearly inspections of the Excursion Operator and/or the excursion, including, but not limited to, conducting site inspections, which should have identified the unsafe conditions of the slippery rocks and the inadequate safety measures provided by the excursion staff; and/or

    d.  Thoroughly inquiring into the Excursion Operator's certifications, reputation, reviews, prior incidents, years in operation, and/or history in working with other cruise lines; and/or

    e.  Training and feedback sessions with excursion staff, during which concerns about the safety of the excursion and the effectiveness of safety measures, including

warnings about slippery surfaces and proper handrails, should have been addressed; and/or

f.  Industry standards and guidelines for walking excursions, which ROYAL should have adhered to in order to provide a safe experience for its passengers; and/or

g.  Periodically requesting and examining safety history reports from the Excursion Operator as well as periodically sending ROYAL's own staff to visit the excursion site(s) and evaluate the excursion experience to ensure safety standards were met.

59.  At all times material hereto, the Excursion Operator's incompetence and/or unfitness caused and/or contributed to STATAM being severely injured while participating in the subject shore excursion.

60.  As a direct and proximate result of the negligence of ROYAL and/or the Excursion Operator, STATAM was injured about STATAM's body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, traumatic stress and other mental and/or nervous issues, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of STATAM's injuries, and suffered physical handicap. The injuries are permanent or continuing in nature and STATAM will suffer the losses and impairments in the future. In addition, STATAM lost the benefit of STATAM's vacation, cruise, and transportation costs.

WHEREFORE, STATAM demands judgment for all damages recoverable under the law and demands trial by jury.

**COUNT II – NEGLIGENT FAILURE TO WARN AGAINST ROYAL**

STATAM re-alleges, adopts, and incorporates by reference the allegations in paragraphs 1-41, and 49-53, as though alleged originally herein.

61.    At all times material hereto, it was the duty of ROYAL to provide STATAM with reasonable care under the circumstances.

62.    At all times material hereto, it was the duty of ROYAL to warn passengers (like STATAM) of dangers that were known, or reasonably should have been known, to ROYAL in places where passengers (like STATAM) are invited to or may reasonably be expected to visit beyond the point of disembarkation.

63.    On or about May 1, 2024, STATAM was participating in the subject excursion, which ROYAL invited and reasonably expected STATAM to participate in since ROYAL sold STATAM the ticket for the excursion.

64.    On or about May 1, 2024, ROYAL and/or its agents, servants, joint venturers and/or employees breached its duty to warn STATAM by failing to warn of the dangers outlined in **paragraphs 24-41** (in the "subject incident" section) of STATAM's complaint.

65.    The above acts and/or omissions by ROYAL and/or its agents, servants, and/or employees, caused and/or contributed to STATAM being severely injured while participating in the subject excursion.

66.    Had STATAM been adequately warned, STATAM would not have participated in the subject excursion, STATAM's incident would not have occurred, and she would not have been injured.

67.    At all times material hereto, ROYAL knew of the foregoing dangerous conditions

causing STATAM's incident and failed to warn STATAM about them, or the conditions existed for a sufficient length of time so that ROYAL, in the exercise of reasonable care under the circumstances, should have learned of them and warned about them. This knowledge was or should have been acquired through: (a) ROYAL's initial approval process of the Excursion Operator and/or the excursion, including, but not limited to, having ROYAL's representative(s) take the excursion; (b) ROYAL's yearly inspections of the Excursion Operator and/or the excursion, including, but not limited to, conducting site inspections; and/or (c) Prior incidents involving ROYAL passengers injured on the subject excursion involving the same or substantially similar excursions operated by the Excursion Operator; and/or (d) Examining the complaints and/or reviews of prior ROYAL passengers who had participated in the excursion.

68.    As a direct and proximate result of the negligence of ROYAL and/or the Excursion Operator, STATAM was injured about STATAM's body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, traumatic stress and other mental and/or nervous issues, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of STATAM's injuries, and suffered physical handicap. The injuries are permanent or continuing in nature and STATAM will suffer the losses and impairments in the future. In addition, STATAM lost the benefit of STATAM's vacation, cruise, and transportation costs.

WHEREFORE, STATAM demands judgment for all damages recoverable under the law and demands trial by jury.

### COUNT III – NEGLIGENCE AGAINST ROYAL
### BASED ON APPARENT AGENCY OR AGENCY BY ESTOPPEL

STATAM re-alleges, adopts, and incorporates by reference the allegations in paragraphs 1-53 as though alleged originally herein.

69.    At all times material hereto, the Excursion Operator were the apparent agent(s) of ROYAL.

70.    At all times material hereto, ROYAL is estopped to deny that the Excursion Operator were their agent(s) or employee(s).

71.    At all times material hereto, ROYAL made manifestations which caused STATAM to believe that the Excursion Operator had authority to act for the benefit of ROYAL. These manifestations included:

    a.    ROYAL allowed its name to be utilized in connection with the advertising of the Excursion Operator; and/or

    b.    ROYAL made all arrangements for the subject excursion without effectively disclosing to STATAM that the subject excursion was being run by another entity and/or entities that it did not believe were its agents; and/or

    c.    ROYAL marketed the subject excursion using its company logo on its website and/or in its brochures and/or on its ship without effectively disclosing to STATAM that the subject excursion was being run by another entity and/or entities that it did not believe were its agents; and/or

    d.    ROYAL maintained an excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the subject excursion without effectively disclosing to STATAM that the subject excursion was being run

by another entity and/or entities that it did not believe were its agents; and/or

e.   Until the point that STATAM actually participated in the subject excursion, STATAM's exclusive contacts concerning the subject excursion was with ROYAL; and/or

f.   ROYAL recommended to STATAM to not engage in excursions, tours or activities that are not sold through ROYAL as ROYAL has no familiarity with other tours or their operations; and/or

g.   The fee for the excursion was charged to STATAM, and collected from STATAM, exclusively by ROYAL; and/or

h.   STATAM received the receipt for the purchase of the subject excursion exclusively from ROYAL; and/or

i. The excursion was offered and utilized solely or virtually solely by ROYAL passengers at the time of the subject excursion and/or marketed by ROYAL.

72.   STATAM reasonably relied on the above, to her detriment, so as to believe that the Excursion Operator were the employee(s) and/or agent(s) of ROYAL in choosing the subject excursion.

73.   It was reasonable to believe that the Excursion Operator were ROYAL's employee(s) and/or agent(s) because STATAM booked, paid for, and made all necessary arrangements for the subject excursion with ROYAL. ROYAL's actions caused STATAM to believe that the Excursion Operator had authority to act on ROYAL's behalf. At no time did the Excursion Operator represent to the ship's passengers or STATAM in particular in a meaningful way that the Excursion Operator

were not agents or employees of ROYAL.

74.     STATAM's reasonable reliance was detrimental because STATAM would not have booked, paid for and/or participated in the subject excursion had STATAM known that the subject excursion was not operated by ROYAL and/or agents of ROYAL.

75.     The foregoing acts of negligence of ROYAL and/or the Excursion Operator were a direct and proximate cause of STATAM's injuries and damages.

76.     As a result of the negligence of the ROYAL, STATAM was injured about STATAM's body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, traumatic stress and other mental and/or nervous issues, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of STATAM's injuries, and suffered physical handicap. The injuries are permanent or continuing in nature and STATAM will suffer the losses and impairments in the future. In addition, STATAM lost the benefit of STATAM's vacation, cruise, and transportation costs.

WHEREFORE, STATAM demands judgment for all damages recoverable under the law and demands trial by jury.

## COUNT IV – NEGLIGENCE AGAINST ROYAL BASED ON
## JOINT VENTURE BETWEEN ROYAL AND THE EXCURSION OPERATOR

STATAM re-alleges, adopts, and incorporates by reference the allegations in paragraphs 1-53 as though alleged originally herein.

77.     At all times material hereto, ROYAL and the Excursion Operator engaged in a joint venture to provide excursions to passengers aboard ROYAL's ship(s).

78.     At all times material hereto, ROYAL and the Excursion Operator entered into an agreement where ROYAL would sell the subject excursion to its passengers and the Excursion Operator would operate the subject excursion.

79.     As its part of the joint venture, ROYAL arranged for, sponsored, recommended, marketed, operated, marketed, sold and/or collected money for the subject excursion, and the money was then shared between ROYAL and the Excursion Operator. As its part of the joint venture, the Excursion Operator provided labor and/or operated the subject excursion.

80.     ROYAL, on behalf of the joint venture, charged a fee to passengers who utilized the excursions. The fee paid by the passengers, including STATAM, was split between ROYAL and the Excursion Operator, such that ROYAL and the Excursion Operator shared a profit of the money made from the shore excursion.

81.     At all times material hereto, ROYAL and the Excursion Operator had joint and/or shared control over aspects of the joint venture. The Excursion Operator had control over the day-to-day workings of the excursions. ROYAL also had control over the day-to-day workings of the excursions in that they required the Excursion Operator to exercise reasonable care in the operation of the subject excursion. ROYAL had control over the arrangements, marketing and sales of the excursion.

82.     At all times material hereto, ROYAL and the Excursion Operator shared a common purpose: to operate the subject excursion for a profit.

83.     At all times material hereto, ROYAL and the Excursion Operator had a joint proprietary and/or ownership interest in the subject excursion. ROYAL had an interest in

arranging, sponsoring, recommending, advertising, operating, and selling the subject excursion as well as collecting money for such excursion, and the Excursion Operator had a proprietary interest in the time and labor expended in operating the subject excursion.

84.     At all times material hereto, ROYAL and the Excursion Operator shared and/or had the right to share in the profits of the subject excursion, as ROYAL retained a portion of the ticket sales for the subject excursion after the tickets were sold, and ROYAL paid the Excursion Operator the remaining portion of the ticket sales for the subject excursion.

85.     At all times material hereto, ROYAL and the Excursion Operator shared and/or had a duty to share any losses that may have been sustained with the subject excursion, including, for instance, when ROYAL issued a refund to passengers for the Excursion Operator's excursion(s), including, but not limited to, the subject excursion.

86.     ROYAL and the Excursion Operator are jointly and severally responsible for each other's negligence as partners of the partnership and/or joint venture.

87.     At all times material hereto, ROYAL and the Excursion Operator therefore:

   a.  Had an intention to create a joint venture;

   b.  Had a joint proprietary interest in the subject matter of the venture;

   c.  Had mutual control and/or joint control over the subject matter of the venture with respect to the provision of excursions to passengers aboard the ship;

   d.  Had a right to share in the profits of the joint venture; and

   e.  Would share losses which may have been sustained.

88.    As joint venturers, ROYAL and the Excursion Operator are liable for each other's negligence. As a result, ROYAL is liable for the negligent conduct of the Excursion Operator.

89.    As a result of the negligence of ROYAL, STATAM was injured about STATAM's body and extremity, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, traumatic stress and other mental and/or nervous issues, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of STATAM's injuries, and suffered physical handicap. The injuries are permanent or continuing in nature and STATAM will suffer the losses and impairments in the future. In addition, STATAM lost the benefit of STATAM's vacation, cruise, and transportation costs.

WHEREFORE, STATAM demands judgment for all damages recoverable under the law and demand trial by jury.

## **DEMAND FOR JURY TRIAL**

Plaintiff, PIA STATAM, demands trial by jury on all issues so triable.

Dated: June 27, 2025

Respectfully submitted,

*/s/ Spencer M. Aronfeld*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@Aronfeld.com
**Matthias M. Hayashi, Esq.**
Florida Bar No.: 0115973
mhayashi@aronfeld.com
ARONFELD TRIAL LAWYERS
1 Alhambra Plaza | Penthouse
Coral Gables, Florida 33134
P:    (305) 441.0440
F:    (305) 441.0198
*Attorneys for Plaintiff*